**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CHARLES MCMANUS,

        Plaintiff,

   v.                                  Civil Action No. 2:07cv74

FRED SCHILLING,
Director of Heath Services for VA. D.O.C.,
DR. ABRAHAM TEKLU,
Medical Director at P.C.C.,
NURSE L. RAY,
Nurse at P.C.C.,
NURSE ELIZABETH EGGERS.,
Nurse at P.C.C.,
NURSE DAVENPORT,
Nurse at P.C.C.,
NURSE JANE/JOHN DOE,
Nurse at P.C.C.,
NURSE WINN,
Nurse at P.C.C.,
GENE JOHNSON,
Director of VA. D.O.C.,
JOHN/JANE DOE,
Director of Prison Health Services, and
NURSE SANDOZZ,
Nurse at P.C.C.[1],

        Defendants.

<u>OPINION AND ORDER</u>

Plaintiff Charles McManus ("Plaintiff"), a Virginia inmate, brings this <u>pro</u> <u>se</u> action

pursuant to 42 U.S.C. § 1983, to redress alleged violations of his constitutional rights.

Specifically, plaintiff alleges that defendants were deliberately indifferent to his serious medical

---

[1]Nurses Winn and Sandozz were dismissed as defendants without prejudice by order and judgment filed April 23, 2007.

needs and therefore violated his Eighth Amendment right to be free from cruel and unusual

punishment.  Doc. 1 (Complaint).   Plaintiff seeks compensatory and punitive damages. Id. at 5.

### I. Procedural History

Plaintiff's complaint was received on February 15, 2007.  Doc. 1.  Plaintiff subsequently

filed a motion titled "Motion to Exclude Defendants."  Doc. 3 (Plaintiff's Motion to Exclude

Defendants).  On April 23, 2007, the Court construed Plaintiff's "Motion to Exclude

Defendants" as a motion to amend the complaint and dismissed defendants Winn and Sandozz as

defendants.  Doc. 4.  Also on April 23, 2007, the Court ordered Plaintiff to provide names or

identifying information for the "John/Jane Doe" defendants within thirty (30) days, noting

failure to respond would result in the dismissal of the unidentified defendants without prejudice.

Id.  On May 18, 2006, Plaintiff filed a response to the April 23, 2007 order identifying Fred

Schilling as the Director of Health Services for the Virginia Department of Corrections and that

Plaintiff was unable provide the name of the nurse cited as John/Jane Doe or the name of the

Director of Prison Health Services.  Doc. 6.  By order filed June 11, 2007, Plaintiff's complaint

was ordered filed and the docket sheet ordered updated to identify Fred Schilling as the Director

of Health Services, Virginia Department of Corrections.  Doc. 9.

On August 10, 2007, defendants Schilling and Johnson filed a motion for summary

judgment with a memorandum and evidence in support thereof.  Docs. 17 (Motion) and 19

(Memorandum in Support).  In accordance with Roseboro v. Garrison, 528 F.3d 309 (4th Cir

1975), Plaintiff was given an opportunity to respond to defendants' motion with any material

that he wished to offer in rebuttal.  Doc. 18 (Roseboro Notice).  The court twice granted Plaintiff

an extension of time in which to respond to defendant Schilling and Johnson's motion.  See

Docs. 21 and 34.  Plaintiff has not filed a response, however, on October 5, 2007, Plaintiff filed a "cross motion for summary judgement [sic]."  Doc. 33.  Plaintiff's motion appears to be against defendants Schilling and Johnson in that his argument relates to these defendants and the certificate of service indicates the plaintiff mailed his motion to counsel for these defendants only.

On September 20, 2007, defendants Teklu, Ray, Davenport and Eggers filed a motion for summary judgment with a memorandum and evidence in support thereof.  Docs. 24 (Motion) and 25 (Memorandum in Support).  Again, in accordance with Roseboro, Plaintiff was given an opportunity to respond to defendants' motion with any material that he wished to offer in rebuttal.  Doc. 26 (Roseboro Notice).  On September 24, 2007, Plaintiff filed his own motion for summary judgment against these defendants along with a memorandum and supporting evidence. Doc. 28 (Motion and Memorandum in Support).  On October 4, 2007, defendants Teklu, Ray, Davenport and Eggers filed their response to Plaintiff's motion for summary judgment.  Doc. 31 (Brief in Opposition).  On October 5, 2007, Plaintiff filed a "motion to amend and enlarge plaintiff's original motion for summary judgement [sic] to address defendants' motion and affidavits contained therein."  Doc. 32.  Plaintiff's motion appears to be in response to defendants Teklu, Ray, Davenport and Eggers's motion for summary judgment.  The certificate of service indicates that plaintiff mailed his response to counsel for these defendants only.

On October 11, 2007, by order, the Court directed the Clerk to file both Plaintiff's "cross-motion for summary judgement [sic]" and Plaintiff's "motion to amend and enlarge plaintiff's original motion for summary judgement [sic] to address defendants' motion and affidavits contained therein."  Docs. 35.  Also,  the Court directed Plaintiff to resubmit these documents

within thirty (30) days with a certificate of service indicating that he mailed copies to all counsel of record if he wished the court to act on his submissions.  Id.  On October 30, 2007, Plaintiff resubmitted his motion for summary judgment , "cross-motion for summary judgement [sic]", and "motion to amend and enlarge plaintiff's original motion for summary judgement [sic] to address defendants' motion and affidavits contained therein" with a certificate of service complying with the Court's October 11, 2007 order.  As such, the Court has considered these motions and they have not been stricken from the record.

## II. FACTUAL ALLEGATIONS

Plaintiff was incarcerated at Powhatan Correctional Center ("PCC") during the time of the events alleged in his complaint.  In February 2002, Plaintiff was diagnosed with terminal cancer.  Doc. 1.  A side effect of Plaintiff's chemotherapy treatment is peripheral neuropathy.  Id.  Plaintiff describes this condition as "a vicious, searing pain" in his lower legs, feet, and hands. Id.

## A. Substitution of Nortriptyline for Neurotin

In June 2005, Plaintiff was treated by an oncologist at the Medical College of Virginia ("MCV").  Id.  There, Plaintiff's oncologist prescribed Neurontin to treat his peripheral neuropathy.  Id.  Plaintiff alleges that after returning to PCC, defendant Teklu, Medical Director at PCC, refused to provide him with Neurontin and instead prescribed Nortriptyline.  Id. Plaintiff alleges that he is allergic to Nortriptyline and therefore refused to take it when it was offered to him by PCC staff.  Id.  After defendant Teklu learned that Plaintiff had refused to take Nortriptyline, he discontinued the prescription because it is PCC's policy to cancel any prescription not being used by an inmate.  Doc. 25, Ex. B at ¶ 15 (Teklu Affidavit).

On August 2, 2005, Plaintiff filed an informal complaint alleging that defendant Teklu had substituted Nortriptyline for the Neurontin that had been prescribed by Plaintiff's oncologist. Doc. 1, Ex. B.  Defendant Teklu provided PCC's staff response to Plaintiff's grievance.  In that response, defendant Teklu stated that Plaintiff had "taken [Nortriptyline] for at least seven days in 2004," that plaintiff had not "complained of any reaction during these times," and that "this is not consistent with allergy to the medication."  Id.  Plaintiff filed an official grievance on August 10, 2005 and received a Level I response from Warden A. Baskerville on September 7, 2005. Id. The response stated the grievance was "unfounded."  Id.  Plaintiff appealed this decision the next day.  Id.

 Defendant Schilling, Director of Health Services, Virginia Department of Corrections, provided a Level II response to Plaintiff's appeal on September 21, 2005.  Id.  There, defendant Schilling concurred that the grievance was unfounded.  Id.  Defendant Schilling explained a review of Plaintiff's medical record revealed that plaintiff "had taken Nortiptalynin [sic] in 2005 without developing any signs of any allergic reaction."  Id.  Level II was the last level of appeal for Plaintiff's original grievance.  Id.

### B. Quick-Release Morphine Treatment

In February 2006, Plaintiff's oncologist prescribed quick-release morphine to Plaintiff in an effort to control the pain caused by his peripheral neuropathy.  Doc. 1.  The prescription directed Plaintiff take the quick-release morphine every four (4) hours, as requested. Id.

Plaintiff alleges that on February 25, 2006, defendant Winn[2] refused to provide him his

---

[2] Defendants Winn and Sandozz were dismissed as defendants without prejudice by order and judgment filed April 23, 2007.

5

quick-release morphine.  Id.  At 11:12 a.m. that morning, Plaintiff submitted an emergency

grievance alleging he had not received his medication.  Doc. 1, Ex. C.  On March 9, 2006,

Plaintiff filed an informal complaint against defendant Winn.  Id.  In her response to Plaintiff's

complaint, defendant Ray, the Director of Nursing at PCC,  wrote, "[t]he way your medication is

ordered is [every] 4 hours when necessary for breakthrough pain.  However, the nurses try to

keep it close to pill line times as possible." Id.

Plaintiff alleges that on February 24, 2006, defendant Davenport refused to provide him

any of his prescribed medications.  Doc. 1.  That day, Plaintiff filed an emergency grievance.

Doc. 1, Ex. D.  On March 9, 2007, Plaintiff filed an informal complaint alleging that "Nurse

Davenport refused to bring [him] any of [his] meds from 7am til [sic] 6:30 p.m." Id.  In her

response to Plaintiff's complaint, Defendant Ray wrote, "you have been prescribed 2 different

morphine narcotics to assist you with your pain and they will be given as close to pill lines as

possible or upon your request.  However, caution must be taken not to give both together or too

close to each other."  Id.

Plaintiff further alleges that on March 3, 2006, Defendant Eggers refused to provide him

quick-release morphine at 12:30 p.m., more than six hours after Plaintiff had received his

morning dose.  Doc. 1.  Plaintiff later received quick-release morphine at 4:30 p.m.  Id.  Plaintiff

filed an emergency grievance at 12:45 p.m.  Doc. 1, Ex. E.  Plaintiff filed an informal complaint

alleging these same facts on March 9, 2006.  Id.  Defendant Ray responded, "the order does read

Morphine 30 m.g at 4hrs PRN for breakthrough pain.  However you also receive MS Contin 30

m.g. (4 tabs) at 12 noon.  These two should not be given that close together.  120 m.g. [plus] 30

m.g. [equals] 150 m.g. at one time."  Id.  On May 3, 2006, Plaintiff received Assistant Warden L.

Lester's Level I response to his grievance.  Id.  There, Lester responded, "I find that staff did not follow the instruction given therefore your grievance is founded."  Id.  The Level I response provided Defendant Teklu's response to the grievance office's investigation: "The two medications could be given together.  If he received the first dose at 6:00 am, he should have been given the next dose anytime after four hours of the first dose if he requested it (as it is ordered as needed)."  Id.

Plaintiff further alleges that on March 17, 2006, "the nurse named as Jane/John Doe" refused to provide Plaintiff his pain medications.  Doc. 1.  The next day, Plaintiff filed an informal complaint alleging the same.  Doc. 1, Ex. F.  In her staff response to the complaint, Nurse Ray wrote, "Nursing Staff was informed to give meds as ordered by MD [and] as close to pill line times as possible."  Id.  On May 30, 2006, Warden Eddie Pearson's Level I response to the grievance determined it founded.  Id.  In that response, Warden Pearson explained:

> You grieved the issue of your quick release morphine not being dispensed as prescribed every 4 hours (PRN) in regular grievance #10309286, dated April 7, 2006.  This grievance was provided a response on May 3, 2006, by Mr. L. Lester, Assistant Warden, in my absence.  That grievance was deemed founded and the institutional remedy was that the Director of Medical (Dr. Teklu, Medical Director) will address with all of the medical staff and document the proper procedure/interpretation of medication dispensing.  This is the Institutional Remedy for that grievance and will be the same institutional remedy for this grievance, which was filed 4 days later, with a different date of incident.  Id.

Plaintiff further alleges that on June 1, 2006, Defendant Davenport refused to provide Plaintiff his quick-release morphine when he requested it.  Doc. 1.  On June 7, 2006, Plaintiff filed an informal complaint, followed by an official grievance on June 21, 2006.  Doc. 1, Ex. G.  Warden Pearson's Level I response on August 16, 2006 determined Plaintiff's grievance founded.  Id.  The response explained that "[i]nstitutional remedy was taken on June 23, 2006

when Major Rowlette informed the Security Staff that [Plaintiff] [was] to receive [his] medication promptly." Id.  On August 17, 2006, Plaintiff appealed.  On September 11, 2006, Plaintiff received a Level II response to his appeal from the Regional Director or Manager of Classification and Records Response.  Id.  That response upheld the decision of the Level I respondent and stated that "[a]ppropriate remedy has been provided."  Id.  Plaintiff's appeal to Level II exhausted his administrative remedies for this grievance.

Plaintiff alleges that on June 7, 2006, defendant Davenport refused to provide Plaintiff his quick-release morphine when he requested it.  Doc. 1.  In his emergency grievance, Plaintiff writes, "I requested my quick release morphine at 9:42 a.m. but Nurse Davenport refused to give it to me stating I had to wait until 10:30 a.m. pill line." Doc. 1, Ex. H.  Plaintiff filed an official grievance on June 21, 2006.  Doc 1, Ex. I.  Warden Pearson's Level I response to this grievance was issued on August 14, 2006 and determined Plaintiff's grievance to be unfounded.  Id. Plaintiff appealed the Level I response on August 15, 2006.  Id.  Defendant Schilling's Level II response concurred with the Level I respondent that the grievance was unfounded.  Id.  In part, Defendant Schilling's response explained:

> According to the information available, it appears you received your Morphine three times on the above date.  Your Morphine was ordered every four hours as needed.  Therefore it must be requested by you prior to being administered. There is nothing in your medical record that substantiates your claim that you did not receive your medication as ordered.  Id.

Plaintiff further alleges that on June 8, 2006, defendant Davenport refused to provide Plaintiff his quick-release morphine when he requested it at 8:45 a.m.  Doc. 1.  Plaintiff later received his dose at 11:10 a.m.  Doc. 1, Ex. K.  That day, Plaintiff filed an emergency grievance and an informal complaint.  Doc. 1, Ex. J and Ex. K.  Plaintiff  filed an official grievance on June

21, 2006.  Doc. 1, Ex. K.  Warden Pearson issued a Level I response to Plaintiff's grievance on

August 21, 2006, writing, in part, "I find that staff did not follow the instruction given therefore

your grievance is founded."  Id.  Further, Warden Pearson provided an institutional remedy,

mandating the Director of Medical address with all medical staff the proper

procedure/interpretation of medication dispensing within 15 days.  Id.  Plaintiff appealed Warden

Pearson's Level I response.  In his Level II response issued on August 28, 2006, defendant

Schilling determined Plaintiff's grievance was founded.  Id.  There, defendant Schilling wrote,

"[t]he medical department is aware of your Morphine being ordered every four hours, and will

ensure that it is made available to you in a timely manner."  Id.

Lastly, Plaintiff alleges that on May 28, 2006, Defendant Sandozz refused to provide

Plaintiff any nausea medication.  Defendant Sandozz was dismissed without prejudice as a

defendant in this action by order and judgment filed April 23, 2007.

## IV. ANALYSIS

### A. Applicable Legal Standards

#### 1. Summary Judgment Standard

Summary judgment is appropriate only when the court, viewing the record as a whole

and in the light most favorable to the nonmoving party, determines that there exists "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Seabulk Offshore, Ltd. v. Am.

Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Terry's Floor Fashions v. Burlington

Indus., 763 F.2d 604, 610 (4th Cir. 1985).  The moving party has the initial burden to show the

absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law.  Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25.   When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19.   Such facts must be presented in the form of exhibits and sworn affidavits.  Celotex Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993).  Failure by plaintiff to rebut defendants' motion with such evidence on his behalf will result in summary judgment when appropriate.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

Although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact.  See Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 586; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997); Tao of Sys. Integration, Inc. v.

Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252.

2. Eighth Amendment Standard for Denial of Medical Case

In this action, plaintiff claims that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. To prove cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy a two-prong test that has both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). For medical care claims, the first component is satisfied by showing that the inmate had a serious medical condition; the second component is satisfied by proving that the prison officials acted with deliberate indifference to the inmate's serious medical condition. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

The first prong, which is an objective inquiry, asks whether the deprivation alleged is "sufficiently serious." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A serious medical need, sufficient to meet the objective component, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognized the necessity for a doctor's attention." Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va 1995) (quoting Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987)). Also, a medical need may become serious if the denial of or delay in treatment causes the inmate to "suffer a life-long handicap or permanent loss." Id.; see also Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002); Mendoza v. Lynaugh, 989 F.2d 191, 195

11

(5th Cir. 1993) (stating that delay is only constitutionally violative if there is deliberate indifference which results in substantial harm).

The second prong of the two-prong test requires the court to determine whether the prison official had a sufficiently culpable state of mind. Wilson, 501 U.S. at 297. This subjective inquiry requires the inmate to demonstrate that the prison officials acted at least with "deliberate indifference" toward his or her needs. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Deliberate indifference describes a state of mind more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835 (construing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To act with deliberate indifference, a prison official must both know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Quinones, 145 F.3d at 167 (quoting Farmer, 511 U.S. at 844). An "unusually long delay between the emergence of a serious medical need and treatment of that need may provide a reasonable basis for an inference of deliberate indifference." Coppage, 906 F.Supp at 1041. However, mere malpractice or negligence in diagnosis or treatment is insufficient to state a constitutional claim, Estelle, 429 U.S. at 105-06; Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990), nor is a disagreement with the level or type of treatment, Estelle, 429 U.S. at 107; Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975) (per curiam) (finding that medical

judgments are not judicially reviewable).  In <u>Estelle</u>, the Supreme Court noted three

circumstances where prison officials may be found to have acted with deliberate indifference to

serious medical needs in violation of the Eighth Amendment: (1) indifference toward a

prisoner's medical needs; (2) intentional denial or delay of an inmate's access to medical care;

and (3) intentional interference with prescribed treatment. <u>Estelle</u>,  429 U.S. at 104-05.

### 3. Standard for Supervisor Liability

Section 1983 liability is personal in nature and the doctrine of *respondeat superior* is

generally inapplicable to actions brought under the statute.  <u>Monell v. Department of Social</u>

<u>Servs.</u>, 436 U.S. 658, 694 (1978); <u>Lopez v. Robinson</u>, 914 F.2d 486, 494 (4th Cir. 1990).  Rather,

to establish liability for civil rights violations, a prisoner must show that the defendant (1)

personally violated a specific right under federal law; (2) implemented an official policy which

resulted in a constitutional violation; or (3) tacitly authorized or demonstrated deliberate

indifference to the unlawful conduct of subordinates.  <u>See</u> <u>Gaston v. Taylor</u>, 918 F.2d 25, 29

(1990), <u>vacated on other grounds on reh'g</u>, 946 F.2d 340 (4th Cir. 1991); <u>Slakan v. Porter</u>, 737

F.3d 368, 372-73 (4th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1035 (1985); <u>Fisher v. Washington</u>

<u>Metro. Area Transit Auth.</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982).  Moreover, supervisory

officials are entitled to rely on the expertise of prison doctors in treating inmates and are not

deliberately indifferent in failing to intervene in treatment.  <u>Miltier</u>, 896 F.3d at 852.

### 4. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

A prisoner must exhaust administrative remedies for lawsuits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion applies regardless whether the prisoner may obtain the type of relief sought in the administrative process. Booth v. Churner, 532 U.S. 731, 734 (2001). In addition, prisoners must properly exhaust available administrative remedies. Proper exhaustion includes compliance with an agency's deadlines and procedures. Woodford v. Ngo, __ U.S. __, 126 S. Ct. 2378, 2386 (2006). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, No. 06-6696, slip op. at 8 (4th Cir. Feb. 28, 2008). Also, inmates are required only to comply with grievance procedures, and are not required to name particular defendants in order to satisfy exhaustion requirements. See Moore 06-6696 at 10; see also Jones v. Bock, __ U.S. __, 127 S. Ct. 910, 922-23 (2007).

"Failure to exhaust available administrative remedies is an affirmative defense, not a jurisdictional requirement, and thus inmates need not plead exhaustion, nor do they bear the burden of proving it." Moore, 06-6696 at 9; see also Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005).

**B. Defendants Teklu, Ray, Davenport, and Eggers's Motion for Summary Judgment**

1. Defendants Davenport and Eggers

Defendants Teklu, Ray, Davenport and Eggers argue that the Plaintiff's claim against defendant Eggers and his claim against defendant Davenport regarding the February 25, 2006 incident should be dismissed for failure to exhaust administrative remedies. For both instances, Plaintiff agrees he did not officially exhaust, but alleges he was unable to do so because, through

no fault of his own, he was prevented from doing so.  Regarding the Eggers incident, Plaintiff

admits that he did not appeal the Level I response, but claims he was unable to appeal the Level I

response because a corrections officer did not provide Plaintiff the Level I response until after

the deadline expired for him to appeal the decision. Doc. 32 at 4.  As to the February 25, 2006

incident involving defendant Davenport, Plaintiff again alleges that he was unable to follow the

proper grievance procedures, this time because his initial complaint was not returned to him until

after the deadline to respond with a grievance had expired. Id. at 6.  If Plaintiff's allegations are

true, for both the February 25, 2006 and March 3, 2006 incidents he was unable to avail himself

of further administrative procedures through no fault of his own.  Therefore,  defendants Teklu,

Ray, Davenport, and Eggers have not met the burden required for the affirmative defense of

failure to exhaust for the February 25, 2006 and March 3, 2006 incidents.

 As to whether the alleged incidents were Constitutional violations, to prove cruel and

unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy a two-prong

test that has both an objective and subjective component.  Farmer, 511 U.S. at 834.  For medical

care claims, the first component is satisfied by showing that the inmate had a serious medical

condition; the second component is satisfied by proving that the prison officials acted with

deliberate indifference to the inmate's serious medical condition.  Quinones, 145 F.3d at 167.

Defendants Teklu, Ray, Davenport, and Eggers do not dispute that Plaintiff's cancer and the side

effects of his chemotherapy treatments constitute a serious medical condition.  Doc. 25 at 11.

Therefore, whether Plaintiff's Eighth Amendment rights were violated rests on a determination

of whether PCC staff or officials acted with deliberate indifference.

 Plaintiff alleges that he was denied his quick-release morphine as prescribed on seven

different occasions between February 24, 2006 and June 8, 2006.  In the spring of 2006, it was

the PCC's policy that inmates received their medications at regular intervals called "pill call."

Doc. 25, Ex. C at ¶ 6 (Ray Affidavit).  However, at some point between February 24, 2006 and

June 8, 2006, in response to Plaintiff's repeated grievances on this issue, defendant Teklu spoke

with the defendant Ray, the Director of Nursing, and explained "that accommodations would

have to be worked out to allow Inmate McManus to be given his morphine every four hours as

ordered." Teklu Affidavit at ¶ 18.  Nurses acting in accordance with institutional policies does

not evince the deliberate indifference necessary for an Eighth Amendment violation; such

personnel should not be expected to violate mandated policies simply to comply with

prescriptive orders.  However, as noted, at some point between February 24, 2006 and June 8,

2006, defendant Teklu communicated to the Director of Nursing that an exception to the pill call

policy would have to be made to allow Plaintiff to receive his medication as ordered.  Therefore,

any incident where Plaintiff was denied his quick-release morphine prior to this exception being

communicated to PCC nurses does not rise to the level of deliberate indifference necessary for a

constitutional violation.  By contrast, however, for any incidents that occurred after the

exception was communicated, PCC staff cannot simply rely on the explanation that they were

following institutional policy to support a conclusion that they were not deliberately indifferent.

Unfortunately, it is unclear from the summary judgment record exactly when the

exception to the pill call policy was communicated by defendant Teklu to defendant Ray; both

defendants Teklu and Ray state that such a communication was made but neither provide the

date when that communication occurred.  What is clear from the summary judgement record,

however, is that the communication took place sometime after the earlier alleged incidents and

sometime before May 30, 2006.  In defendant Ray's staff response to Plaintiff's complaint

regarding the March 17, 2006 allegation, Ray writes, "Nursing Staff was informed to give meds

as ordered by MD [and] as close to pill line times as possible."  Doc. 1, Ex. F.  In addition, in his

May 30, 2006 response to Plaintiff's March 17, 2006 grievance, Warden Pearson writes, ". . . the

institutional remedy [provided in Deputy Warden's May 3, 3006 response to an earlier

grievance] was that Director of Medical (Dr. Teklu, Medical Director) will address with all of

the medical staff and document the proper procedure/interpretation of medication dispensing.

This is the Institutional Remedy for that grievance and will be the same institutional remedy for

this grievance, which was filed 4 days later, with a different date of incident." Id.

Given this time line, it is clear that the incidents occurring in late February 2006 and

early March 2006 occurred prior to the communication to PCC nursing staff of the exception to

the pill call policy.  For this reason, defendant Davenport did not exhibit deliberate indifference

when she allegedly denied Plaintiff his quick-release morphine on February 24, 2006, nor did

defendant Eggers exhibit deliberate indifference when she allegedly denied Plaintiff his quick-

release morphine on March 3, 2006.  Therefore, Defendants Teklu, Ray, Davenport and Eggers's

Motion for Summary Judgment specific to the February 24, 2006 incident involving defendant

Davenport and the March 3, 2006 incident involving defendant Eggers is **GRANTED.**

Plaintiff alleges that he was denied his quick-release morphine on three different

occasions in June 2006.  For all three incidents, plaintiff alleges that it was defendant Davenport

that denied him his medication.  As explained, the summary judgment record indicates that the

exception for the dispensing of Plaintiff's medication was likely communicated to PCC nursing

staff prior to June 2006.  Defendant Davenport does not address the specific circumstances of

these three incidents in June and therefore, defendants Teklu, Ray, Davenport, and Eggers's

Motion for Summary Judgment specific to these three incidents is **DENIED**.  If defendant

Davenport wishes to file any further dispositive motions, she is **ORDERED** to do so within

forty-five (45) days from the date of this Opinion and Order.

        2. Defendant Ray

        Defendants Teklu, Ray, Davenport and Eggers argue that the Plaintiff's claim against

defendants Ray and Teklu should be dismissed for failure to exhaust administrative remedies.

The basis for Plaintiff's claims against defendants Ray and Teklu are the multiple instances

where he alleges he was denied his quick-release morphine.  Plaintiff properly exhausted the

administrative remedies available to him for each of those specific instances.  Because inmates

are only required to comply with prison grievance procedures and are not required to name

particular defendants, Plaintiff's claim against defendants Ray and Teklu cannot be dismissed for

failure to exhaust administrative remedies.  See Moore 06-6696 at 10; see also Jones, 127 S. Ct.

at 922-23.

        Plaintiff alleges that defendant Ray violated Plaintiff's Eighth Amendment rights by

failing, in her supervisory capacity, to ensure that PCC nursing staff provided Plaintiff his quick-

release morphine when necessary.  Under the theory of *respondeat superior*, and given the

circumstances alleged, defendant Ray can only be held liable if she tacitly authorized or

demonstrated deliberate indifference to the unlawful conduct of subordinates.  Gaston, 918 F.2d

at 29.  The summary judgment record does not support such a conclusion.   Like her

subordinates, defendant Ray did not have the authority to alter procedures to allow the

dispensing of medication outside of pill call.  Ray Affidavit at ¶ 7.  Therefore, while Plaintiff's

grievances for the earlier incidents detail that defendant Ray knew that Plaintiff was claiming he was not receiving his medication as ordered, she did not have the authority to alter the pill call policy to allow an exception for Plaintiff's medication.  Further, after defendant Teklu became aware that Plaintiff was not receiving his pain medication as ordered and communicated that he authorized an exception for the dispensing of Plaintiff's pain medication, defendant Ray took steps to rectify the problem and instructed her nurses to provide Plaintiff his QRM every four hours.  Id. at ¶ 15.

For these reasons, defendants Teklu, Ray, Davenport, and Eggers's Motion for Summary Judgment specific to Plaintiff's claims against defendant Ray is **GRANTED**.

### 3. Defendant Teklu

Plaintiff alleges two violations of his Eighth Amendment rights by defendant Teklu. First, Plaintiff alleges defendant Teklu's substitution of Nortriptyline for Neurontin as a treatment for Plaintiff's peripheral neuropathy was a Constitutional violation.  Doc. 1.   The summary judgment record, however, demonstrates that defendant Teklu's substitution of Nortriptyline for Neurontin was a medical decision regarding a type of treatment.  While Plaintiff may disagree with the type of treatment ordered by defendant Teklu, a prisoner's disagreement with a prison official regarding treatment type is not a violation of the prisoner's Eighth Amendment rights.  Estelle, 429 U.S. at 107; Russell, 528 F.2d at 319.  Clearly, Plaintiff disagreed with defendant Teklu's substitution of Nortriptyline.  Further, Plaintiff correctly states that parts of his medical file indicated that he was allergic to Nortriptyline.  However, the  record details that defendant Teklu's decision was supported by his medical judgment.  After Plaintiff returned to PCC, defendant Teklu was not able to prescribe and order Neurontin because it was

not listed on the PCC formulary and because the medication had not been approved by the Food and Drug Administration as a pain treatment.  Teklu Affidavit at ¶ 11. Yet, before simply substituting another pain medication for the Neurontin he could not order, defendant Teklu first consulted with the oncologist that had prescribed the Neurontin to determine whether Nortriptyline was a "good substitute."  Id. at  ¶ 12.  The oncologist confirmed that Nortriptyline was a "good substitute" for Neurontin.  Id.  After consulting with the prescribing oncologist, defendant Teklu then reviewed Plaintiff's medical history to determine whether Plaintiff's claimed allergy to Nortryptiline had merit.  Defendant Teklu found no medical indications that substantiated Plaintiff's claimed allergy. Id. at  ¶ 13.

Defendant Teklu's actions do not support a claim of deliberate indifference; his substitution of Nortriptyline for Neurontin was a medical judgment supported by a review of Plaintiff's medical history and a discussion with Plaintiff's oncologist.  Questions of medical judgment are not subject to judicial review.  Russell, 528 F.2d at 319.  Even if defendant Teklu's conclusion that Plaintiff was not allergic to Nortriptyline was incorrect, such conduct would rise only to the level of mere malpractice or negligence in diagnosis, both of which are insufficient to support a claimed Eighth Amendment rights violation. Estelle, 429 U.S. at 105-06; Miltier, 896 F.2d at 852.

Plaintiff also alleges that defendant Teklu violated Plaintiff's Eighth Amendment rights by failing, in his supervisory capacity, to ensure that Plaintiff received his quick-release morphine every four hours.  Under the theory of *respondeat superior,* defendant Teklu can only be held liable if he tacitly authorized or demonstrated deliberate indifference to the unlawful conduct of subordinates.  Gaston, 918 F.2d at 29.  As was the case with Plaintiff's similar claim

20

against defendant Ray, the summary judgment record does not support the conclusion that defendant Teklu tacitly authorized or demonstrated any deliberate indifference to any alleged unlawful conduct by subordinates.  Defendant Teklu only became aware that Plaintiff was not receiving his quick-release morphine as prescribed after Plaintiff submitted his grievances.  After receiving this information, defendant Teklu attempted to correct the problem by informing defendant Ray that accommodations would have to be made to allow Plaintiff to receive his morphine as ordered.  Teklu Affidavit at ¶ 18.  After this discussion, defendant Teklu believed that Plaintiff's complaints had been resolved.  Id. at ¶ 19. These actions do not support a conclusion that defendant Teklu was deliberately indifferent to any alleged unlawful conduct by his subordinates.  Defendant Teklu was informed a problem existed, took steps to correct that problem, and then believed that the problem had been corrected.

For these reasons, Defendant Teklu, Ray, Davenport, and Eggers's Motion for Summary Judgment as to Plaintiff's claims against defendant Teklu is **GRANTED**.

### C. Defendants Schilling and Johnson's Motion for Summary Judgment

Plaintiff alleges defendant Schilling violated Plaintiff's Eight Amendment rights in two respects: first, by failing, in his supervisory capacity, to overrule defendant Teklu's decision to substitute Nortriptyline for Neurotin; and second, by failing, in his supervisory capacity, "to ensure that prescribed orders were followed" in dispensing to Plaintiff his quick-release morphine.

Regarding the first allegation, Plaintiff is correct that defendant Schilling failed to overrule defendant Teklu's decision to substitute Nortriptyline for Neurontin.  However, such failure by defendant Schilling to overrule the decisions of PCC's medical personnel is not a

Constitutional violation.  Supervisory officials like defendant Schilling are entitled to rely on the expertise of prison doctors in treating inmates and are not deliberately indifferent in failing to intervene in treatment.  Miltier, 896 F.3d at 852.  Defendant Schilling relied on both available medical records and the expertise of defendant Teklu when he determined Plaintiff's grievance was unfounded. Doc. 1, Ex. B; Schilling Affidavit at ¶ 7.  In his Level II response, defendant Schilling explained that a review of Plaintiff's medical records indicated that Plaintiff had taken Nortriptyline in the past without exhibiting signs of an allergic reaction, facts that led defendant Teklu to make his initial medical decision to substitute Nortiptyline for Neurontin.  Defendant Schilling is not a medical doctor and is permitted to rely on the professional judgment of prison medical personnel.  Miltier, 896 F.3d at 852.  Therefore, defendant Schilling's refusal to overrule defendant Teklu's decision to substitute Nortriptyline for Neurontin was not a violation of Plaintiff's Eighth Amendment rights.

Regarding the allegation that defendant Schilling violated Plaintiff's Eighth Amendment rights by failing "to ensure that prescribed orders were followed," the summary judgment record, even when viewed in the light most favorable to the Plaintiff, does not support a conclusion that defendant Schilling was deliberately indifferent.  On only two occasions did Plaintiff's grievances regarding the denial or delay of his quick-release morphine reach defendant Schilling. On August 28, 2006, defendant Schilling provided a Level II response to Plaintiff's grievance that he did not receive his quick-release morphine on June 7, 2006.  Doc. 1, Ex. I.  In that response, defendant Schilling indicated that he had reviewed the information available to him and relied on that information to determine that Plaintiff's grievance was unfounded.  Id.  Also on August 28, 2006, Schilling provided a Level II response to Plaintiff's grievance that he did

not receive his quick-release morphine on June 8, 2006.  Doc. 1, Ex. K.  Here, the response again suggests that defendant Schilling investigated Plaintiff's claim.  The response also indicates that Schilling had been notified that corrective action had been taken.  In this response, defendant Schilling writes, "[t]he medical department is aware of your Morphine being ordered every four hours, and will ensure that it is made available to you in a timely manner."  Id.

Plaintiff seems to suggest that defendant Schilling should have done more to prevent any recurrence of PCC staff's failure to provide Plaintiff his quick-release morphine when he requested it.  The available evidence, however, suggests that defendant Schilling acted appropriately in his review of any possible problems.  In both instances where defendant Schilling received a grievance concerning Plaintiff's receipt of his quick-release morphine, defendant Schilling investigated Plaintiff's claims and indicated that he had been informed that corrective action had been taken by PCC staff.  Defendant Schilling relied upon assurances from the medical department that Plaintiff would receive his quick-release in a timely manner.  Therefore, nothing in the summary judgment record creates a material issue of fact as to defendant Schilling's liability for alleged constitutional violations; defendant Schilling's actions neither establish deliberate indifference nor supervisor liability.

As to defendant Johnson, Section 1983 liability is personal in nature.  Monell, 436 U.S. at 694.  It appears Plaintiff named defendant Johnson in this action based solely on his supervisory role within the Department of Corrections.  In his complaint, Plaintiff does not allege any personal involvement by defendant Johnson in any alleged violations of Plaintiff's Eighth Amendment rights and has provided no evidence which suggests such personal involvement.  In fact, in Plaintiff's "cross-motion for summary judgement [sic]" he states ". . . Johnson is not

23

personally involved in the claims before the Court . . . ." Doc. 33 at 2. While Plaintiff argues that despite not being personally involved, defendant Johnson violated Plaintiff's Eighth Amendment rights by "failing to ensure that the medical care received by inmates incarcerated in the VA. D.O.C. satisfies the standards established by the Court," Plaintiff provides no citation or legal standard that supports this supposition. Id. Plaintiff does not allege that denying inmates medical attention was a policy within the Department of Corrections and has not shown any basis for drawing an inference that defendant Johnson tacitly approved of necessary medicine being denied or delayed. Therefore, the summary judgment record does not support Plaintiff's claim that defendant Johnson violated Plaintiff's Eighth Amendment rights.

For these reasons, defendants Schilling and Johnson's Motion for Summary Judgment is **GRANTED**.

### IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** defendants Schilling and Johnson's Motion for Summary Judgment. The Court **GRANTS** defendants Teklu, Ray, Davenport and Eggers's Motion for Summary Judgment on the claims against defendants Teklu, Ray, and Eggers and the claim against defendant Davenport's involvement in the alleged February 25, 2006 incident. The Court **DENIES** defendants Teklu, Ray, Davenport and Eggers's Motion for Summary Judgment as to the claims against defendant Davenport's involvement in the alleged June 1, 2006, June 7, 2006, and June 8, 2006 incidents. Accordingly, defendants Schilling, Johnson, Teklu, Ray, and Eggers are **ORDERED** dismissed as defendants to this action. If the remaining defendant, defendant Davenport, wishes to file any further dispositive motions, she is **ORDERED** to do so within forty-five (45) days from the date of this Opinion and Order.

Further, as Plaintiff has made no allegations significant to find liable the defendants he identifies as Nurse John/Jane Doe and John/Jane Doe, Director of Prison Health Services, they too are **DISMISSED** as defendants to this action.  The Court **DENIES** Plaintiff's Motion for Summary Judgment.

Under Rule 54, subsections (a) and (b), of the Federal Rules of Civil Procedure, the dismissal of Plaintiff's claims against defendants Schilling, Johnson, Teklu, Ray, Eggers, Nurse John/Jane Doe and John/Jane Doe, Director of Prison Health Services will not be a final judgment for purposes of appeal until the Court has also resolved Plaintiff's claims against defendant Davenport.  As a result, Plaintiff may not yet appeal the court's dismissal of defendants Schilling, Johnson, Teklu, Ray, Eggers, Nurse John/Jane Doe and John/Jane Doe, Director of Prison Health Services.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to Plaintiff, counsel for defendants Teklu, Ray, Davenport and Eggers, and counsel for defendants Schilling and Johnson.

IT IS SO **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

March 6, 2008