# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**CHARLES MCMANUS,**

                **PLAINTIFF,**

     **v.**                                             **Civil Action No. 2:07cv74**

**FRED SCHILLING, Director**
**of Heath Services for VA. D.O.C., et al.,**

                **DEFENDANTS.**[1]

## OPINION AND FINAL ORDER

Plaintiff Charles McManus ("Plaintiff"), a Virginia inmate, brings this <u>pro</u> <u>se</u> action pursuant to 42 U.S.C. § 1983, to redress alleged violations of his constitutional rights. Specifically, plaintiff alleges that defendants were deliberately indifferent to his serious medical needs and therefore violated his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 1 (Complaint). Plaintiff seeks compensatory and punitive damages. <u>Id.</u> at 5.

This matter is before the Court on Defendant Wanda Davenport's ("Defendant Davenport") Motion for Summary Judgment. Docs. 42 (Motion) and 43 (Memorandum). For the reasons explained herein, Defendant Davenport's Motion for Summary Judgment is **GRANTED**.

---

[1]Nurses Winn and Sandozz were dismissed as defendants without prejudice by order and judgment filed April 23, 2007. <u>See</u> Docs. 4 and 5. Fred Schilling, Dr. Abraham Teklu, Nurse Ray, Nurse Eggers, Gene Johnson, Nurse Jane/John Doe, and John/Jane Doe, Director of Prison Health Services were dismissed as defendants by order and judgment filed March 7, 2008. <u>See</u> Docs. 40 and 41.

## I. Procedural History[2]

Plaintiff's complaint was received on February 15, 2007.[3]  Doc. 1.

On August 10, 2007, defendants Schilling and Johnson filed a motion for summary judgment with a memorandum and evidence in support thereof.  Docs. 17 (Motion) and 19 (Memorandum).  The court twice granted Plaintiff an extension of time in which to respond to defendants Schilling and Johnson's motion.  See Docs. 21 and 34.  Plaintiff did not file a response; however, on October 5, 2007, Plaintiff filed a "cross motion for summary judgement [sic]."  Doc. 33.  Plaintiff's motion appears to be against defendants Schilling and Johnson in that his argument relates to these defendants and the certificate of service indicates the plaintiff mailed his motion to counsel for these defendants only.

On September 20, 2007, defendants Teklu, Ray, Davenport and Eggers filed a motion for summary judgment with a memorandum and evidence in support thereof.  Docs. 24 (Motion) and 25 (Memorandum).  On September 24, 2007, Plaintiff filed his own motion for summary judgment against these defendants along with a memorandum and supporting evidence.  Doc. 28 (Motion and Memorandum in Support).  On October 4, 2007, defendants Teklu, Ray, Davenport and Eggers filed their response to Plaintiff's motion for summary judgment.  Doc. 31 (Brief in Opposition).  On October 5, 2007, Plaintiff filed a "motion to amend and enlarge plaintiff's

_____

[2] This section discusses only the procedural history relevant to Defendant Davenport's instant motion for summary judgment.  For a more complete discussion of this action's procedural history, see the Court's March 7, 2008 Order.  Doc. 40.

[3] On March 23, 2008, Plaintiff subsequently filed a motion titled "Motion to Exclude Defendants."  Doc. 3.  On April 23, 2007, the Court construed Plaintiff's "Motion to Exclude Defendants" as a motion to amend the complaint and dismissed defendants Winn and Sandozz as defendants.  Doc. 4.

original motion for summary judgement [sic] to address defendants' motion and affidavits contained therein." Doc. 32. Plaintiff's motion appears to be in response to defendants Teklu, Ray, Davenport and Eggers's motion for summary judgment. On October 11, 2007, by order, the Court directed the Clerk to file both Plaintiff's "cross-motion for summary judgement [sic]" and Plaintiff's "motion to amend and enlarge plaintiff's original motion for summary judgement [sic] to address defendants' motion and affidavits contained therein." Doc. 35.

By Order entered March 7, 2008, the Court granted defendants Schilling and Johnson's motion for summary judgment. See Doc. 40 at 24. The Court also granted defendants Teklu, Ray, Davenport and Eggers's motion for summary judgment on the claims against defendants Teklu, Ray, and Eggers and the claim against Defendant Davenport regarding her involvement in the alleged February 25, 2006 incident. Id. Accordingly, the Court dismissed defendants Schilling, Johnson, Teklu, Ray, and Eggers as defendants in this action. The Court denied defendants Teklu, Ray, Davenport and Eggers's motion for summary judgment as to the claims against Defendant Davenport regarding her involvement in the alleged June 1, 2006, June 7, 2006, and June 8, 2006 incidents. Id. Finally, the Court advised the sole remaining defendant, Defendant Davenport, that if she wished to file any further dispositive motions, she was ordered to do so within forty-five (45) days of March 7, 2008. Id.

On April 21, 2008, Defendant Davenport filed a motion for summary judgment and a memorandum in support thereof ("Defendant Davenport's Motion"). Docs. 42 (Motion) and 43 (Memorandum). On May 12, 2008, Plaintiff filed a response to Defendant Davenport's Motion.[4]

---

[4]On May 7, 2008, Plaintiff filed a Motion for Extension of Time to File Response to Defendant Davenport's Motion. Doc. 45. On May 8, 2008, the Court granted Plaintiff's motion and extended by seven (7) days Plaintiff's opportunity to respond to Defendant Davenport's

Doc. 47.  Defendant Davenport filed a reply to Plaintiff's response on May 19, 2008.  Doc. 48.

## II. FACTUAL ALLEGATIONS[5]

Plaintiff was incarcerated at Powhatan Correctional Center ("PCC") during the time of the events alleged in his complaint.  In February 2002, Plaintiff was diagnosed with terminal cancer.  Doc. 1.  A side effect of Plaintiff's chemotherapy treatment is peripheral neuropathy.  Id. Plaintiff describes this condition as "a vicious, searing pain" in his lower legs, feet, and hands. Id.

In February 2006, Plaintiff's oncologist prescribed quick-release morphine to Plaintiff in an effort to control the pain caused by his peripheral neuropathy.  Doc. 1.  The prescription directed Plaintiff take the quick-release morphine every four (4) hours, as needed.  Id.

Plaintiff alleges that on June 1, 2006, Defendant Davenport refused to provide Plaintiff his quick-release morphine when he requested it at 9:00 a.m.[6]  Doc. 1; Doc. 47 at 2.  Plaintiff states that he did receive his quick-release morphine ". . . sometime after 11am [sic]."  Doc. 47 at 2.  On June 7, 2006, Plaintiff filed an informal complaint, followed by an official grievance on June 21, 2006.  Doc. 1, Ex. G.  Warden Pearson's Level I response on August 16, 2006 determined Plaintiff's grievance founded.  Id.  The response explained that "[i]nstitutional remedy was taken on June 23, 2006 when Major Rowlette informed the Security Staff that

_____

Motion.  Doc.  46.

[5]This section includes only those factual allegations relevant to the remaining defendant, Defendant Davenport.  For a more complete discussion of Plaintiff's factual allegations, see the Court's March 7, 2008 Order.  Doc. 40.

[6]Plaintiff alleges that he was denied his pain medication when he requested it on four (4) occasions prior to the June 1, 2006, June 7, 2006, and June 8, 2006 incidents discussed here. The claims arising from those first four (4) incidents, and the defendants allegedly responsible for those (4) incidents, were dismissed by Order entered March 7, 2008.  See Doc. 40.

[Plaintiff] [was] to receive [his] medication promptly." Id. On August 17, 2006, Plaintiff

appealed. On September 11, 2006, Plaintiff received a Level II response to his appeal from the

Regional Director or Manager of Classification and Records Response. Id. That response

upheld the decision of the Level I respondent and stated that "[a]ppropriate remedy has been

provided." Id. Plaintiff's appeal to Level II exhausted his administrative remedies for this

grievance.

Plaintiff alleges that on June 7, 2006, Defendant Davenport refused to provide Plaintiff

his quick-release morphine when he requested it. Doc. 1. In his emergency grievance, Plaintiff

writes, "I requested my quick release morphine at 9:42 a.m. but Nurse Davenport refused to give

it to me stating I had to wait until 10:30 a.m. pill line." Doc. 1, Ex. H. Plaintiff filed an official

grievance on June 21, 2006. Doc 1, Ex. I. Warden Pearson's Level I response to this grievance

was issued on August 14, 2006 and determined Plaintiff's grievance to be unfounded. Id.

Plaintiff appealed the Level I response on August 15, 2006. Id. Defendant Schilling's Level II

response concurred with the Level I respondent that the grievance was unfounded. Id. In part,

Defendant Schilling's response explained:

> According to the information available, it appears you received your Morphine
> three times on the above date. Your Morphine was ordered every four hours as
> needed. Therefore it must be requested by you prior to being administered.
> There is nothing in your medical record that substantiates your claim that you did
> not receive your medication as ordered.

Id.

Plaintiff further alleges that on June 8, 2006, Defendant Davenport refused to provide

Plaintiff his quick-release morphine ". . . when [he] requested it at approximately 9am [sic]."

Doc. 47 at 2-3. Plaintiff later received his dose at 11:10 a.m. Doc. 1, Ex. K. That day, Plaintiff

filed an emergency grievance and an informal complaint.  Doc. 1, Ex. J and Ex. K.  Plaintiff

filed an official grievance on June 21, 2006.  Doc. 1, Ex. K.  Warden Pearson issued a Level I

response to Plaintiff's grievance on August 21, 2006, writing, in part, "I find that staff did not

follow the instruction given therefore your grievance is founded."  Id.  Further, Warden Pearson

provided an institutional remedy, mandating the Director of Medical address with all medical

staff the proper procedure/interpretation of medication dispensing within 15 days.  Id.  Plaintiff

appealed Warden Pearson's Level I response.  In his Level II response issued on August 28,

2006, Defendant Schilling determined Plaintiff's grievance was founded.  Id.  There, Defendant

Schilling wrote, "[t]he medical department is aware of your Morphine being ordered every four

hours, and will ensure that it is made available to you in a timely manner."  Id.

### III. LEGAL STANDARD

Summary judgment is appropriate only when the court, viewing the record as a whole

and in the light most favorable to the nonmoving party, determines that there exists "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Seabulk Offshore, Ltd. v. Am.

Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Terry's Floor Fashions v. Burlington

Indus., 763 F.2d 604, 610 (4th Cir. 1985).  The moving party has the initial burden to show the

absence of an essential element of the nonmoving party's case and to demonstrate that the

moving party is entitled to judgment as a matter of law.  Honor v. Booz-Allen & Hamilton, Inc.,

383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir.

2003); see Celotex Corp., 477 U.S. at 322-25.  When the moving party has met its burden to

show that the evidence is insufficient to support the nonmoving party's case, the burden then

shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue

for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986);

Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19.   Such facts must be presented in the form

of exhibits and sworn affidavits.  Celotex Corp., 477 U.S. at 324; see also M&M Med. Supplies

& Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993).  Failure by

plaintiff to rebut defendants' motion with such evidence on his behalf will result in summary

judgment when appropriate.  "[T]he plain language of Rule 56(c) mandates the entry of summary

judgment . . . against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial."  Celotex Corp., 477 U.S. at 322.

Although the court must draw all justifiable inferences in favor of the nonmoving party,

in order to successfully defeat a motion for summary judgment, the nonmoving party must rely

on more than conclusory allegations, "mere speculation," the "building of one inference upon

another," the "mere existence of a scintilla of evidence," or the appearance of "some

metaphysical doubt" concerning a material fact.  See Anderson, 477 U.S. at 252; Matsushita, 475

U.S. at 586; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Stone v.

Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997); Tao of Sys. Integration, Inc. v.

Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004).  Rather, the

evidence must be such that the fact-finder reasonably could find for the nonmoving party.  See

Anderson, 477 U.S. at 252.

# IV. ANALYSIS

To prove cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy a two-pronged test that has both an objective and subjective component. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). For medical care claims, the first component is satisfied by showing that the inmate had a serious medical condition; the second component is satisfied by proving that the prison officials acted with deliberate indifference to the inmate's serious medical condition. <u>Johnson v. Quinones</u>, 145 F.3d 164, 167 (4th Cir. 1998).

The first prong, an objective inquiry, asks whether the deprivation alleged is "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). A serious medical need, sufficient to meet the objective component, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognized the necessity for a doctor's attention." <u>Coppage v. Mann</u>, 906 F. Supp. 1025, 1037 (E.D. Va 1995) (quoting <u>Monmouth County Corr. Inst'l Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3rd Cir. 1987)). Also, a medical need may become serious if the denial of or delay in treatment causes the inmate to "suffer a life-long handicap or permanent loss." <u>Id.</u>; <u>see also</u> <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994), <u>abrogated on other grounds by</u> <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993) (stating that delay is only constitutionally violative if there is deliberate indifference which results in substantial harm).

The second prong requires the court to determine whether the prison official had a sufficiently culpable state of mind. <u>Wilson</u>, 501 U.S. at 297. This subjective inquiry requires the inmate to demonstrate that the prison officials acted at least with "deliberate indifference"

toward his or her needs.  Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.  "Deliberate

indifference describes a state of mind more blameworthy than negligence"; there must be "more

than ordinary lack of due care for the prisoner's interests or safety."  Farmer, 511 U.S. at 835

(citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  To act with deliberate indifference, a prison

official must both know of and disregard "an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference."  Id. at 837.  A prison official is

not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which

the facts gave rise was insubstantial or nonexistent."  Quinones, 145 F.3d at 167 (quoting

Farmer, 511 U.S. at 844).  An "unusually long delay between the emergence of a serious medical

need and treatment of that need may provide a reasonable basis for an inference of deliberate

indifference."  Coppage, 906 F.Supp at 1041.  However, mere malpractice or negligence in

diagnosis or treatment is insufficient to state a constitutional claim.  Miltier v. Beorn, 896 F.2d

848, 852 (4th Cir. 1990).

    The claims that remain in this action against Defendant Davenport all allege that

Defendant Davenport delayed dispensing to Plaintiff his quick-release morphine and that the

delay was a violation of Plaintiff's Eighth Amendment rights.  Plaintiff admits that on each of

the three (3) occasions, he later received his requested medication.  Plaintiff states that on June 1,

2006 he requested his medication at approximately 9:00 a.m. and that he didn't receive his ". . .

pain medication until sometime after 11am [sic]".  Doc. 47 at 2.  Plaintiff states that on June 7,

2006, he requested his medication at 9:42 a.m., but was refused by Defendant Davenport and

was told he had to wait until the 10:30 a.m. pill line.  Doc. 1, Ex. H; Doc. 47 at 2.  Plaintiff states

that on June 8, 2006, Defendant Davenport refused to provide him his medication when he requested it at 9:00 a.m., but states that he received his medication at 11:10 a.m.  Doc. 1, Ex. K. Therefore, the two (2) central questions regarding the remaining claims against Defendant Davenport are: (1) whether delays lasting between approximately forty-five (45) minutes and two (2) hours are "sufficiently serious" deprivations; and (2) if delays of such length are "sufficiently serious", whether Defendant Davenport's actions rose to the level of deliberate indifference.

For medical care claims where an inmate alleges that a delay in treatment is the constitutional deprivation, "the objective seriousness of the deprivation should be measured 'by reference to the <u>effect</u> of delay in treatment.'" <u>Crowley v. Hedgepeth</u>, 109 F.3d 500, 502 (8th Cir. 1997) (quoting <u>Hill v. DeKalb Reg'l Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994)) (emphasis in <u>Hill</u>).  Therefore, an inmate who complains that delay in medical treatment is the constitutional violation "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  <u>Hill</u>, 40 F.3d at 1188.  Further, the "[t]olerable length of delay in providing medical attention depends on the nature of the medical need and the reason for delay."  <u>Id.</u> (quoting <u>Harris v. Coweta County</u>, 21 F.3d 388, 393-94 (11th Cir. 1994)) (alterations in original).  Accordingly, delay in medical treatment claims must be "interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay."  <u>Hill</u>, 40 F.3d at 1189.

Plaintiff has provided no evidence to support a conclusion that these delays in providing him medication to treat the pain caused by his peripheral neuropathy had lasting physical effects

or that they worsened his underlying medical condition.  While Plaintiff alleges that he remained in pain while he awaited his quick-release morphine, he does not allege that these delays in the dispensing of his pain medication worsened his peripheral neuropathy.  In addition, Plaintiff has provided no verifiable medical evidence to establish any detrimental effect of the delay in delivery of his pain medication.  For these reasons, no reasonable juror could find that the delays in the delivery of Plaintiff's pain medication on these three (3) instances were "sufficiently serious" to satisfy the first prong of the Eighth Amendment violation test.

Further, even if these delays were constitutionally violative, the summary judgement record does not support the conclusion that Defendant Davenport's actions evinced deliberate indifference to Plaintiff's medical needs.  "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  In the context of an Eighth Amendment claim, "[d]eliberate indifference may be viewed as a state of mind that lies on a continuum of mind states somewhere between simple negligence and intent to harm." Coppage, 906 F. Supp. at 1036.  What an inmate must show to substantiate such a claim is that a state actor failed to act with the subjective knowledge that her failure to act would place the inmate at substantial risk of serious harm.  Id.  For two (2) reasons it is clear that Plaintiff has failed to establish that Defendant Davenport acted with deliberate indifference to Plaintiff's serious medical needs.

First, on each of the three (3) occasions, Plaintiff received his medication within approximately two (2) hours of requesting it.  While an "unusually long delay between the emergence of a serious medical need and treatment of that need may provide a reasonable basis for an inference of deliberate indifference," Coppage, 906 F.Supp at 1041, a delay of

approximately two (2) hours is not unusually long when considered within the context of

Plaintiff's incarceration.  As Defendant Davenport explains, it is her recollection that Plaintiff

was in segregation during the Spring of 2006, and that this segregation could have resulted in

some difficulty in the dispensing of his medication.  Doc. 42, Ex. A at ¶ 4. (Affidavit of Wanda

Davenport).  As such, given the inherent difficulties in dispensing medication to inmates that are

segregated from the general population, delays in providing pain medication ranging from

approximately forty-five (45) minutes to two (2) hours are not so unusually long as to provide a

reasonable basis for an inference of deliberate indifference.

Second, the summary judgment record supports a conclusion that Defendant Davenport

was acting in what she believed were Plaintiff's best interests.  In her affidavit submitted with her

motion for summary judgment, Defendant Davenport states that on these three occasions in June,

"it is [her] recollection that . . . the only time [she] refused [Plaintiff] his medication was when

he requested his quick release morphine before four hours elapsed."  Doc. 42, Ex. A at ¶ 5.

(Affidavit of Wanda Davenport).  Plaintiff disputes this contention, arguing instead that each

time he requested his medication four (4) hours had already elapsed.  However, the importance

of Defendant Davenport's statement is not for its worth in determining whether Plaintiff had, in

fact, received his previous dose within four (4) hours, but rather for what it evinces about

Defendant Davenport's state of mind.  Plaintiff states that she believed she was prohibited from

dispensing to Plaintiff his pain medication on the dates in question  ". . .[b]ecause the order

called for dispensing of morphine every four hours."  Id.  Because of this belief, by refusing to

provide Plaintiff his medication only on occasions where she believed four (4) hours had not

elapsed since his last dose, it is clear that Plaintiff believed her actions were in the best medical

interests of the patient.  It is possible that Defendant Davenport was mistaken as to the timing of

Plaintiff's previous doses.  However, for Plaintiff's claim to survive, he must do more than prove

that Defendant Davenport could have provided Plaintiff his medication when he requested it.  To

be successful, Plaintiff must also prove that Defendant Davenport believed there was a

substantial risk of serious harm to Plaintiff if the delivery of his medication was delayed.  For the

reasons explained, the record simply does not support such a conclusion.  Accordingly, no

reasonable juror could find that Defendant Davenport's conduct on June 1, 2006, June 7, 2006,

and June 8, 2006 evinced a deliberate indifference to Plaintiff's serious medical needs.

Because no reasonable juror could find that the delays in Plaintiff's receipt of his pain

medication on June 1, 2006, June 7, 2006, and June 8, 2006 were "sufficiently serious"

deprivations and because the summary judgment record does not support the conclusion that

Defendant Davenport's failure to dispense Plaintiff's medication on these dates when he

requested it evinced deliberate indifference, Defendant Davenport's motion for summary

judgment is **GRANTED**.

## V. CONCLUSION

For the aforementioned reasons, Defendant Davenport's Motion for Summary Judgment

is **GRANTED**.  Accordingly, Defendant Davenport is **ORDERED** dismissed as a defendant to

this action.

Because Defendant Davenport was the sole remaining defendant to this action, the

granting of her Motion for Summary Judgment is a final judgment in this action for purposes of

appeal.  As such, Plaintiff is **ADVISED** that he may appeal from this Opinion and Final Order

by forwarding a written notice of appeal to the Clerk of the United States District Court, United

States Courthouse, 600 Granby Street, Norfolk, VA 23510.  Said written notice must be received

by the Clerk within thirty (30) days from the date of this Opinion and Final Order**.**  If Plaintiff

wishes to proceed <u>in</u> <u>forma</u> <u>pauperis</u> on appeal, the application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> is to

be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street,

Richmond, Virginia 23219.

     The Clerk is **DIRECTED** to send a copy of this Opinion and Order to Plaintiff, counsel

for defendants Teklu, Ray, Davenport and Eggers, and counsel for defendants Schilling and

Johnson.

     IT IS SO **ORDERED**.


                                           /s/
                                 HENRY COKE MORGAN, JR.
                         SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 28, 2008